HERBERT J. WILLARD, ADMINISTRATOR OF

ANDREW J. WILLARD,

v.

C. C. PINARD ET UX.

GENERAL TERM, 1892.

*Note imports consideration. Fact that payee educated and payor illiterate does not alter rule. Finding of mas-ter not warranted. Interest in book account.*

1.  The fact that one of two persons who have business dealings cannot read and write, being otherwise of ordinary memory and judgment, while the other is a lawyer, who promises to be fair and keep accurate accounts of their transactions, does not establish a trust relation between the two, so as to cast upon the latter the burden of proving a consideration for a promissory note given him by the former in the course of such dealings.

2.  In a hearing before a special master, the weight to be given such a note as evidence is entirely for the master, and his finding as to the consideration is conclusive.

3.  The intestate and defendant had dealings commencing in 1863, in the course of which the intestate advanced the defendant

certain sums of money, which were settled for in 1872 by the giving of the defendant's promissory notes. The master found that these notes included $200 of usury, and reported that the only evidence on which he based this finding was the testimony of two witnesses, to the effect that previous to 1872 the intestate had told them that the defendant was paying him ten per cent, the fact that banks at that time usually took eight per cent, and that "the kind of transactions between these parties would indicate some consideration other than the mere legal rate, and less than the ordinary rate." *Held*, that this evidence did not warrant the finding of the master that usury was included in the notes, although it might tend to show that usury was paid.

4.    The general rule that in book account interest is chargeable only on yearly balances may be varied by special agreement.

Petition to foreclose a mortgage. Heard at the December term, Caledonia county, 1891, upon a master's report and exceptions of both parties thereto. START, chancellor, overruled the exceptions of both parties, and decreed for the orator according to the report. Both parties appeal. The opinion states the case.

*Alexander Dunnett* and *Charles A. Willard* for the orator.

A payment of compound interest is not usurious. *Culver v. Bigelow*, 43 Vt. 249; *Burchard v. Knapp*, 31 Vt. 679; *Flannery v. Flannery*, 58 Vt. 576; *Catlin v. Marsh*, 16 Vt. 44.

The finding of the master that the notes of 1872 included $200 usury is not warranted by the evidence. *Harvey v. National Life Ins. Co.*, 60 Vt. 209; *Jackson v. Jackson*, 51 Vt. 253; *Ricker v. Clark*, 54 Vt. 289; *Gleason v. Childs*, 52 Vt. 421; 2 Best Ev., pp. 635, 460; 3 Starkie Ev., 1,235; *Admr. of Hammond v. Smith*, 17 Vt. 231; *Bank of United States v. Corcoran*, 2 Pet. 121; *Richmond v. Aiken*, 25 Vt. 324; *Bach v. Cohn*, 3 La. Ann. 103.

II

*Bates & May* for the defendant.

The relation of the parties was one of trust and confidence. *Wade* v. *Pulsifer*, 54 Vt. 45 ; *Farman* v. *Brooks*, 9 Pick. 232 ; *Chamberlain* v. *Esty*, 55 Vt. 378.

The burden was therefore upon the orator to show a consideration for the notes of 1872. Bailey's Onus Probandi, p. 316 ; *Alexander* v. *Rodriguez*, 12 Wall. 323 ; 2 White & Tudor Lead. Cas. Eq., pp. 12, 13.

The opinion of the court was delivered by

ROSS, Ch. J. This is a proceeding to foreclose a mortgage. The orator's intestate in 1863 bargained a lot of land in the village of St. Johnsbury to the defendant, C. C. Pinard, and agreed to furnish him money to enable him to build a house thereon. May 23, 1872, the intestate conveyed the lot and house, and took back a duly executed mortgage to secure the payment of the defendant's promissory notes amounting to $2,500. June 22, 1885, these notes and the mortgage were given up, and a bottom mortgage taken to the Passumpsic Savings Bank to secure the payment of the defendant's note for $1,000, and a second mortgage was given to the intestate to secure the payment to him of the defendant's promissory note for $1,540. This suit is to foreclose the last named mortgage. The defendants filed a cross bill, claiming that usury had entered into the debt secured, and that payments had been made and not applied, so that the debt secured by the mortgage in suit had been overpaid, and praying that the estate account for such overpayment on the defendant's note and mortgage to the savings bank. The cross bill was duly answered. The issues thus formed were referred to a master, who heard the parties and made his report. From the decree made upon the master's report both parties appealed to this court. Both parties took exceptions to the master's first and supplemental reports. The

defendant's contention that the cross bill is in the nature of a bill of discovery is not sustained by the cross bill. That sets forth various claims of usury and of payments not credited, but prays for no discovery in regard to the same.

I.   The defendants, while admitting that the notes given in 1872 and in 1885 ordinarily import consideration, contend that the relation of the intestate to the defendants was of trust and confidence, of such a character that the burden rested on the orator to establish the consideration of the notes, and that the notes *per se* did not import consideration. To establish this relation they rely upon the facts found; that the defendant and his wife were unable to read or write, much more than to write their names. It is not found that they were not possessed of ordinary faculties of mind, and ordinary memory and judgment in regard to property and its value. It is also found that the intestate was a business man and a lawyer ; that he professed friendship for the defendants, agreed to treat them fairly, and to keep accurate accounts of their transactions. These agreements are no more than the law always implies in dealings between the ordinary debtor and creditor. It is not shown or claimed that the intestate ever was the trustee of the defendants in regard to any of their transactions. So far as is found the parties sustained to each other the ordinary relation existing between an educated, honest business man, and an ordinarily bright and capable man possessed of memory and judgment, but uneducated in knowledge of books and of the art of reading and writing except to a limited extent. The facts reported fail to bring the case within the principles governing the decisions cited for the defendants. The master therefore properly considered the promissory notes given by the defendants as importing full consideration for the amount specified therein. The weight to be given to the notes themselves, and whether the other evidence and circumstances sustained or overbore the evidence furnished by the notes,

was addressed to the master, and unless he has received and considered improper testimony, the facts found by him can not be revised by this court. Considerable of the argument for the defendant was proper to be addressed to the master, but was of a character which this court cannot consider. It was proper for the master to consider that the parties had dealings, outside their dealings strictly applicable to the mortgage indebtedness, which might have entered into the notes of May 23, 1872, or June 22, 1885. The intestate's inventories of those years, made as of April first, would not necessarily show all the indebtedness which formed the consideration of the notes. It is found that the intestate had other notes against the defendant. He also endorsed the defendant's notes to the bank, and he was frequently making personal loans to him. All this is shown by the intestate's books and other testimony. The intestate's account with the defendant embraced other matters than the mortgage transaction. The transactions were of long standing. The intestate was not here to explain them. His death closed the mouth of the other party. These considerations were all addressed to the master. It has not come to our attention that the master considered any improper evidence against the defendants, and had evidence on which to base all his findings against the defendants. It is urged that some of the intestate's charges for interest for money advanced, from the time of the advancement instead of from the close of the year, or the balancing of the accounts, are improper. On book accounts, when no other understanding or agreement is shown, interest is allowed only on the yearly balances. But this is the rule only when no other understanding or agreement is shown. It is not unlawful for parties to settle their accounts and charge interest on each item from the time it accrued. There was frequent balancing of the intestate's account when these charges were included. The balance found quite often was paid. Sometimes it was

carried to the new account. All this clearly indicated that the parties had frequent lookings over, and determination of the balance due. It is to be presumed the parties went over the account item by item. The master finds that no more than lawful interest was ever charged by the intestate for these money advancements. We think the master was right in not allowing the defendants to be credited with these charges of interest on money advanced by the intestate from the time of advancement. It is somewhat indicative of the character of the account kept by the intestate, reaching back twenty years and more, that very few mistakes or inaccuracies have been found by the master, although it has been vigorously attacked at many points. He thinks there is a mistake in a charge of May 6, 1873, of $8.25, of March 26, 1885, of $5, of April 15, 1889, of $4. These are allowed. The master also allows the defendants as of December 5, 1882, $6.27, and as of October 18, 1889, $10.03. The last two were credited on the books of the intestate. We find no error in any of these allowances, nor in the refusal of the master to make further allowances to the defendants on transactions occurring during the life of the intestate. The defendants' exceptions to the master's report were properly overruled.

II. The orator excepted to the master's allowance of $200 usury as entering into the notes of May 23, 1872, as unsupported by evidence. The master says he has set forth in his report all of the evidence tending to establish this allowance in favor of the defendants. These facts are that one witness testified that in 1866, and at several times of which he gives no date, he heard the intestate say he was *getting* ten per cent interest of the defendant. It is evident that the other times were prior to giving the mortgage in 1872, as they are cited as bearing upon that transaction. Another witness testified that the intestate told him the same in substance in 1869. He also finds that during a portion of the time cov-

ered by the dealings between the parties eight per cent was
the ordinary rate charged by banks. He also says, "then
the kind of transactions between these parties would indicate
some consideration other than the mere legal rate, and less
than the ordinary rate of interest." This is all of the evi-
dence which the master has specified on which he bases his
finding that $200 of usury entered into the notes of May 23,
1872. It is true the intestate's book showed due from the
defendant on April 1, $2,400. This is balanced, when the
notes were given, by two items of cash amounting to $100,
and by part of notes given for deed of house, $2,300. But
the master does not speak of this entry as influencing him
in this finding. It is to be observed that the qestion before
the master was not whether the defendants, between 1863
and 1872, or after the date last named, *paid* the intestate
sums of money as usury *eo nomine*. Such sums would be-
come barred at law, by the statute of limitations, in six
years. While this statute does not apply, strictly speaking,
to suits in equity, yet equity follows the law generally in
regard to such payments. In ascertaining the sum due in
equity the orator could well have replied that payments of
usury of more than six years standing, if found by the mas-
ter, should be disallowed. But no such payments were
found established, either from the intestate's books or other-
wise. Yet while the evidence of the two witnesses and the de-
fendants' allegations in the cross bill are to the effect that the
defendant paid the intestate usury *eo nomine*, they do not
tend to show that such usury was included in the notes of
May 23, 1872. Nor does the fact that banks took eight per
cent have any such tendency. None of this evidence re-
lated directly to the giving of the notes of May 23, 1872, or
to the indebtedness which was their consideration. Such an
inference can rest only upon a presumption. Then if it re-
lated to this indebtedness it was to the effect that usury was
*paid*, not that *it was included in the notes* to be paid when

the indebtedness was extinguished. That such is not legiti-
mate testimony to establish that usury was included in the
notes of May 23, 1872, is decided in *Hammond* v. *Smith*,
17 Vt. 231. That was ejectment upon a mortgage. The
defence was that the notes were void for usury. Testimony
was given that the defendant, while the debt was running,
was heard to say to the intestate that he could not afford to
pay him twelve per cent, as he had been paying. To which
the intestate replied that money was worth twelve per cent,
and if the defendant didn't wish to pay it he might return
the money. The court said this testimony had no tendency
to show a usurious agreement when the mortgage was given.
No more has the testimony of these witnesses, which related
to transactions long before the giving of the notes of May
23, 1872, if it related to the indebtedness which was then
secured by mortgage, have any legitimate tendency to show
that usury was included in the notes. At most it tended to
show that usury had been paid on some of the indebtedness
which went into those notes. If any presumption arose from
that fact, it was that the defendant continued to pay usury on
the other notes, not that usury was included in them. The
fact that banks took a higher rate per cent of interest than
was lawful, some portion of the time, had no tendency to
show that the intestate took it, much less that he included it
in these notes. What there was in the kind of transactions
between the parties which indicated some consideration other
than legal rate of interest the master has not informed us.
We observe nothing in these transactions which has a ten-
dency to establish that usury was included in the notes.
That the intestate purchased a livery stock, paid for its feed,
and helped sell it again might indicate that the intestate
would deserve and perhaps demand something for his ser-
vices and trouble, but does not indicate that the demand took
the form of usury, nor that, if it took such form, it was in-
cluded in the notes. It could not have entered into the

notes, for the livery transactions were subsequent to giving the notes. The master has left us in the dark in reference to what he discovered in the transactions which indicated that $200 of usury entered into these notes. We discover nothing in them having a tendency leading to such a result. We do not find anything in the evidence referred to by the master as all the evidence which influenced him in finding this fact, which had a legitimate tendency to establish it.

*The pro forma decree is reversed, and cause remanded with a mandate to enter a decree for the orator in accordance with the views heretofore expressed.*

Taft, J., dissenting.